David Stebbins (pro se Plaintiff)     123 W. Ridge Ave., APT D, Harrison, AR 72601
(870) 212-4947     acerthorn@yahoo.com

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                             PLAINTIFF

VS.                          Case 3:22-cv-04082-AGT

JOHN DOE, d.b.a. "CMDR IMPERIALSALT" & "ZELLZANDER"     DEFENDANTS

**OPPOSITION TO MOTION TO SET ASIDE ENTR OF DEFAULT**

Comes now, pro se Plaintiff David Stebbins, who hereby submits the following Response in Opposition to the Defendant's Motion to Set Aside Entry of Default.

### I: TABLE OF CONTENTS

| Section | Page |
|---|---|
| **I: TABLE OF CONTENTS** | 1 |
| **II: TABLE OF AUTHORITIES** | 2 |
| **III: ARGUMENT** | 3 |
|     **III-1: Two of the three falk factors are entirely unaddressed by the Defendant.** | 3 |
|        III-1-A: The Defendant has no meritorious defense. | 4 |
|        III-1-B: I will be prejudiced if the default is set aside. | 6 |
|     **III-2: Defendant's Culpable Conduct** | 7 |
|        III-2-A: He was only made aware of the case by text message on April 2, 2024 | 8 |
|        III-2-B: He moved "quickly" to learn how to appear in the case, but he's too poor to afford counsel | 9 |
|        III-2-C: Vague allegations of "mental instability" and baseless accusations of homicidal intent | 9 |
|        III-2-D: Defendant was allegedly not properly served | 11 |
|        III-2-E: Blocking all emails from @yahoo | 11 |
|        III-2-F: He, allegedly, doesn't check his Gmail accounts | 13 |

| | |
|---|---|
| III-2-G: Defendant supposedly terminated his zellzander email account | 14 |
| III-2-H: "A few simple google searches" would apparently reveal his primary email account | 17 |
| III-2-I: Claiming to have a falling out with his parents | 17 |
| III-2-J: Most of the email addresses allegedly are not his. | 18 |
| III-2-K: Allegations of past lying are not relevant to this action. | 18 |
| **IV: CONCLUSION** | 20 |

## II: TABLE OF AUTHORITIES

| **Rules and Statutes** | **Page(s)** |
|---|---|
| • Fed.R.Civ.P. 11 | 10,11 |
| • Fed.R.Civ.P. 12 | 4 |
| • Fed.R.Civ.P. 55 | 9 |
| • Federal Rule of Evidence 403 | 19 |
| • Federal Rule of Evidence 404 | 16,19 |

| **Case Law** | **Page(s)** |
|---|---|
| • Brandt v. Am. Bankers Ins. Co. of Fla., 653 F.3d 1108 (9th Cir. 2011) | passim |
| • Dollar Systems, Inc. v. Avcar Leasing Systems, Inc., 890 F. 2d 165 (9th Cir. 1989) | 19 |
| • In re Ball (2nd Dist. 1934) 2 Cal.App.2d 578) | 15 |
| • Kern v. TXO Production Corp., 738 F. 2d 968, 970 (8th Cir. 1984) | 20 |
| • Loughran v. Loughran, 292 US 216 (1934) | 19 |
| • Matsushita v. Zenith, 475 US 574 (1986) | 6 |
| • Republic Molding Corporation v. BW Photo Utilities, 319 F. 2d 347 (9th Cir. 1963) | 19 |
| • US v. Signed Personal Check No. 730, 615 F. 3d 1085 (9th Cir. 2010) | 3 |

## III: ARGUMENT

1. For the following reasons, the Defendant's motion is frivolous and should be denied.

**III-1: Two of the three falk factors are entirely unaddressed by the Defendant.**

2. When moving to set aside an entry of default, there are three factors (known as the "falk factors") that must be considered. In my Motion to Strike (Dkt. 42), I cited the precedent of US v. Signed Personal Check No. 730, 615 F. 3d 1085, 1091 (9th Cir. 2010). In its order granting that motion, the Court cited the case of Brandt v. Am. Bankers Ins. Co. of Fla., 653 F.3d 1108, 1111 (9th Cir. 2011). Both cases gave identical precedent. Both cases held that the three falk factors are (1) whether the plaintiff will be prejudiced, (2) whether the defendant has a meritorious defense, and (3) whether culpable conduct of the defendant led to the default.

3. Both cases affirmed that the factors are "disjunctive," meaning that any one factor weighing against the defendant is singlehandedly grounds for the court to deny the motion. With that in mind, it is baffling that the Defendant would choose to focus only on one single factor: Whether he engaged in culpable conduct that led to the default.

4. Of course, he still fails to *prove* even that one factor, but he didn't even *attempt* to address the other two factors.

5. Although the Court still has *discretion* to set aside the default if one or two falk factors are unproven[1], I can't imagine the Court would still have that discretion if *all three* falk factors weigh against the Defendant. If all three factors caution against setting aside default, the Court loses its discretion and must deny. Since two of the three factors were not addressed at all, they automatically weigh against the Defendant.

6. Meanwhile, the Court cannot simply declare that the first two falk factors (meritorious defense, and lack of prejudice) favor the Defendant despite the Defendant's complete failure to even try to prove them. That would be an affront to my constitutional right to an impartial tribunal. See Brandt, supra at 1110 ("The district court found American Bankers was culpable," not because it found positive evidence of culpability, but simply "because it [the defendant]

---

1 See Brandt, supra at 1111-12 ("Neither Franchise Holding II nor Mesle supports the new rule the Brandts propose, stripping the district court of its discretion to set aside a default... if it finds the defaulting defendant acted culpably.")

failed to provide a credible explanation for its failure to respond to Plaintiff's lawsuit"). This is especially true if the Court were to decide the second falk factor (whether the defendant has a meritorious defense) without any input from the defendant. If the Court were to start thinking of defenses the Defendant could potentially use, the Court would effectively become the Defendant's lawyer in practice, and at that point, I shouldn't even have to explain how that is an affront to my rights.

7. However, for the sake of thoroughness, I will address the other two falk factors before addressing the arguments he raised in his actual motion.

### III-1-A: The Defendant has no meritorious defense.

8. This is perhaps the most important of the three falk factors. After all, the whole reason default judgment is disfavored is because the huge public policy preference of deciding cases on the merits. If there is no meritorious defense to be raised, where the case would almost certainly just result in an immediate judgment on the pleadings and/or summary judgment anyway, and so setting aside default is merely delaying the inevitable, that public policy interest ceases to exist. Also, please keep in mind what I just said a moment ago: This, of all the falk factors, is one where the Court would egregiously violate my rights if it were to find in the Defendant's favor without any direct input from the Defendant.

9. As I thoroughly demonstrated in Dkt 38-8, ¶¶ 14-24 and ¶¶ 29-41, there is no defense the Defendant can possibly raise. In his now-stricken Answer, the Defendant attempted to raise a few heavily strained affirmative defenses, but for the reasons I explained in Dkt. 42, ¶¶ 8-21, all of those defenses are so weak that they deserve to be stricken pursuant to Fed.R.Civ.P. 12(f), independently of the grounds the Court gave for striking the whole Answer.

(a) The Central District of California absolutely does not have jurisdiction. In fact, if we are to transfer the case to the district of the Defendant's domicile, then it should be transferred to the Western District of Washington, since that's where the Defendant was living when he actually did the deeds I'm suing him for.

(b) I did indeed register the copyright. In fact, the Court can see the registration with its own two eyes, so how can the Defendant possibly deny this fact?

 (c) The reposting isn't fair use. In fact, it's as far from fair use as you could possibly get.

 (d) I am not required to file a DMCA Takedown before I sue the direct infringer. I have no idea where he even got the idea that this was a requirement. He certainly doesn't cite to any authority stating as much.

10. In addition to that, his denials[2] in that Answer make no sense. For example, on Page 2 of his Answer, he denies ¶¶ 14 & 15 of my Complaint. However, those paragraphs are where I allege that he reposted the stream on Kiwi Farms with only two sentences of criticism and commentary. However, we must remember that these posts are *publicly visible!* The links in the original complaint no longer work, for reasons I explain in Dkt. 38-8, ¶¶ 16-18. However, I still provided an updated link in between ¶ 17 and ¶ 18 in that filing, and that link *does* still work[3].

11. So the Defendant denies that he reposted the video? Well, the Court can see the reposting with his own two eyes! What's there to deny?!

12. The stupidity of this denial reminds me of a famous Reddit post where a teacher discussed one of the most mentally retarded students she ever had:

> "Kevin stole my phone during class. I called it. It rang. He denied that it was ringing. (Not that it wasn't his, not that he did it.....no, he denied that the phone was actually ringing)."
> Source: www.reddit.com/r/AskReddit/comments/219w2o/comment/cgbhkwp/?context=3

13. For all of these reasons and more, the Defendant has no meritorious defenses. As such, setting aside his default would, in all likelihood, be a complete waste of time. Even if he is granted leave to file an Answer, there is a 99% chance the case would just be terminated immediately thereafter on a motion for judgment on the pleadings and/or summary judgment anyway, since there is no defense he can possibly put up.

14. Remember that it takes more than "metaphysical doubt" to overcome a motion for

---

2 While the denial of the allegations in the complaint is not an affirmative defense, it is nonetheless a relevant consideration when determining whether or not the Defendant has any meritorious defenses for purposes of setting aside an entry of default, so it is still worth addressing.

3 As of the time of this writing, all except Part 2 of that post is unplayable. However, that is only because, as of the time of this writing, the entire site is having trouble processing attachments. If you scroll to the top of that page, you can see a note from the site owner saying "Attachments are being repaired. There is no order. Just wait." So I stand by my claim that the link still works.

summary judgment; "the issue of fact must be 'genuine.'" See Matsushita v. Zenith, 475 US 574, 586 (1986). So if the Defendant cannot show a greater-than-astronomical chance that his case could survive an immediate motion for summary judgment and/or judgment on the pleadings, then setting aside his default would be a waste of time and so should be denied.

<u>III-1-B: I will be prejudiced if the default is set aside.</u>

15. The Defendant also does not even attempt to address whether or not I will be prejudiced if default is set aside. While there is generally a presumption of lack of prejudice to the plaintiff, it is a factor that needs to be considered in this case.

16. I am suing for copyright infringement. That means I can only recover a maximum statutory damages award of $150,000. The fines for contempt of court (particularly in connection with Injunction #3 that I request in the Motion for Default Judgment) may bring my total monetary recovery above that, but those don't take effect until (A) I actually get an injunction, and (B) he disobeys the injunction.

17. As I pointed out in Dkt. 38-8, ¶¶ 73-81, the duration for which the infringement has been ongoing means I have, in all likelihood, earned the maximum $150,000 statutory damages award, just on Trobaugh damages alone.

18. This means that every single day that the case goes on without judgment being entered means I am suffering more and more Trobaugh damages that I cannot hope to recover in the judgment because the judgment was already maxed out and had already reached the $150,000 cap, even when I had filed the motion for default judgment in the first instance, let alone now. Combine that with the fact that, as I previously demonstrated, giving the Defendant an opportunity to raise any defenses would just be a waste of time anyway, and you can see how I am prejudiced by every day the Defendant manages to buy himself time with his frivolous delay tactics.

19. Maybe, if this were more like Case 3:24-cv-00398-LJC (Stebbins v. Baz), where I issued DMCA takedowns and he countered them, meaning the infringing videos would not be reinstated while the case is ongoing, the Defendant might have had a better case for saying that I'm not prejudiced by setting aside the default. But here, literally every day that passes without Injunction #1 (removal of the video from the site) being imposed on the Defendant is prejudicial to me.

20.     Therefore, the Court should deny his motion to set aside default.

### III-2: The grounds offered by the Defendant for not being
### culpable in the default are all patently frivolous.

21.     The one falk factor that the Defendant makes even a token effort to address in his motion is that he is not culpable in allowing the case to be entered in default. However, he fails utterly to actually *prove* even this one factor. I would like to address all eleven of his paragraphs and systematically demonstrate how the allegations in this motion not only fail to show that is not culpable in allowing the default to happen, but are most likely bald-faced lies.

22.     While reviewing my rebuttal arguments, I would like for the Court to keep in mind the following facts which have been previously established in this case, none of which the Defendant make any attempt to dispute:

   (a)     The Defendant has previously demanded "trial by combat" over private email. See Dkt. 30-1. He also admitted that he didn't intend to send the first email in that chain, and that he regrets letting me know that this email address belonged to him.

   (b)     The Defendant has known about this case since its inception. See Dkt. 30, ¶ 7, as well as Dkt. 30-2. That forum post is dated July 12, 2022, literally *one day* after the Complaint (Dkt. 1) was uploaded to Pacer.

   (c)     The Defendant has actively taken steps to try and prevent me from being able to identify and/or serve process on him. See Dkt. 30, ¶ 7, as well as Dkt. 30-3.

   (d)     He previously stated that he has a lawyer "handy" (aka already on retainer). See Dkt. 38-8, ¶ 59, as well as Dkt. 38-3.

23.     The Defendant claims that has reviewed the case "up to current," so he apparently knows about these facts, so he could easily have disputed them, but didn't.

24.     Also keep in mind that, while he makes quite a few bold claims throughout his eleven-paragraph motion, he doesn't attempt to ***show proof*** of any of them. Some of these are claims he very easily could show proof of, but he doesn't. This lack of proof where proof should exist and be easily accessible to him indicates that the Defendant is outright lying.

25.     As one final general note to keep in mind, I wish to remind both the Court and the Defen-

dant that it is not necessary for the default to be 100% the Defendant's fault in order for the third falk factor to weigh against him. The factor does not state "whether the default was primarily the defendant's fault." It states "whether there was *culpable conduct* from the defendant that led to the default." (emphasis added). Unlike in personal injury torts there is no "comparative fault" in this case. "Culpable conduct" necessarily means "any nonzero amount of conduct that qualifies as culpable." In other words, as long as the Defendant engaged in even one single solitary action that the Court finds to be "culpable," the entire third falk factor weighs against the Defendant. Here, the Defendant gave eleven paragraphs, giving excuse after excuse for why being entered in default was merely an honest mistake by him. If even one single solitary excuse offered by the Defendant is found to be "unpersuasive" to the Court, the entire third factor must fail. In fact, *all* of his excuses are frivolous, for reasons I will discuss momentarily, but all it takes is *one* excuse to be his fault in order for the entire third falk factor to weigh against him.

26. With that said, let us analyze his eleven paragraphs one by one:

<u>III-2-A: He was only made aware of the case by text message on April 2, 2024</u>

27. First, in ¶ 1 of his motion, the Defendant insists that he was not culpable in being entered in default because he didn't even know about the case until April 2 of this year. This is not only false, but is provably a bald-faced lie, because as I established earlier, the Defendant knew about this case less than 24 hours after it was uploaded to Pacer.

28. For the sake of argument, let's assume that he means he only learned about the default from his parents, not the entire case (even though he contradicts that assumption in ¶ 4 of his motion). Even then, that doesn't make any sense. You're saying that the parents who disowned him to the point of kicking him out with nowhere to go and not caring if he ended up on the streets were actually following this case more attentively than the actual defendant himself? He, more than anyone else, ought to be monitoring this case like a vulture, but the parents who don't even care if he's homeless still care enough about him to notify him of the default in this case?

29. This is the first of many instances I mentioned above where he could easily have produced evidence to support his claims, and that his failure to do so is proof that he is lying. He says his parents sent him a text message? In that case, he should still have the text message saved

to his phone. Why not take a screenshot of that text message and attach it as an exhibit to this motion? I'll tell you why: It's because that text message doesn't exist. He just made it up.

30.     But even if the text message does exist, he is still culpable. Again, he knew about the case since its inception, so the fact that he wasn't already following the case attentively is entirely his fault, and as I previously established, *one action* that is (A) the Defendant's fault and (B) leads to the default is enough for the entire third falk factor to fail.

III-2-B: He moved "quickly" to learn how to appear in the case, but<br>he's too poor to afford counsel

31.     In ¶ 2 of his motion, the Defendant claims that, once he learned about the case, he moved "quickly" to figure out how to represent himself in the case. Again, this is patently false. He knew about the case the day after it was filed, which means he had **nearly two years** to get his act together! What has he been doing these last two years that he didn't have time to research how to represent himself in court for a lawsuit that he *knew* was pending against him? He claims to be chronically unemployed, so it's not like he was busy being a responsible adult.

32.     Remember that it only takes one culpable action by him in order for him to fail the entire third falk factor. Sitting on one's hands for well over a year and not researching the things you knew you were going to have to learn certainly seems pretty culpable to me. "The determination of what conduct constitutes 'excusable neglect' under Rule 60(b)(1) and similar rules [such as Rule 55(c)] 'is at bottom an equitable one.'" See Brandt, supra at 1111. Since it is equitable, that means the equitable maxim of *vigilantibus non dormientibus aequitas subvenit* ("equity aids the vigilant, not those who sleep on their rights") becomes applicable.

33.     For that matter, what happened to that lawyer he had "handy" approximately two weeks before the lawsuit got filed? Was he just lying when he said that? If so, and he is indeed just a pathological liar as I alluded to in Dkt. 38-8, ¶¶ 58-59, then why should the Court believe *anything* that he says?!

III-2-C: Vague allegations of "mental instability" and<br>baseless accusations of homicidal intent

34.     Perhaps in an attempt to explain why he spent the past two years procrastinating on lear-

ning how to represent himself, the Defendant, in ¶ 3 of his motion, alleges his "mental instability" while the case was pending. It is unclear if this "mental instability" was during the nearly years the case was pending but before he was served, or if he is referring to the present.

35.     Either way, the Court should dismiss his allegations out of hand. First, he does not tell us exactly what his "mental instabilities" are. Very few mental illnesses justifies this level of indolence on his part. Has he been diagnosed with anything? If so, then this is yet another instance where he should easily have documentary evidence he could show to us. He could easily have attached some medical records and/or a doctor's note proving that he has been diagnosed with such and such mental health issue. The fact that he has not done so is proof that he is just making it up. But if he hasn't been diagnosed with anything, then his self-diagnosis is flagrantly inadmissible and should be dismissed out of hand accordingly.

36.     His allegations that he fears that I "may get the idea to somehow locate, apprehend, torture, and murder the defendant over this copyright case even if [I am] victorious," in addition to not showing his lack of culpability[4], is downright preposterous. That is a very serious accusation, one he should not be allowed to make without substantial proof. Even *making* such a heinous accusation in the first place without proof should be sanctionable under Fed.R.Civ.P. 11.

37.     The credibility of this already outlandish accusation is further undermined by the fact that he had the audacity to challenge me to "trial by combat" only a few days after the case got filed, as mentioned above. That is not the sort of thing you say to a person you are scared of and who you feel will try to kill you, and it certainly isn't the sort of thing you say to your opponent (and leave a clear paper trail of evidence when you say it) when you are trying to make *your opponent* look like a violent psychopath while you are just a helpless and innocent victim!

38.     But even barring that, even if he were sincere in this allegation, that only serves to further undermine his already dwindling claim that he didn't know about the entry of default. Remember that he knew about this case since Day 1. If he was truly afraid that I might try and kill him over this dispute, why wasn't he following the case ... you know ... *like his life depended on it?!* The answer is simple: Because he isn't actually afraid I'm going to try and kill him. He just pulled that

---

[4] Again, comparative fault is not a factor in this case. The third falk factor is whether the defendant is culpable, not the plaintiff.

out of his backside with no evidence to back it up, just to make me seem like the bad guy.

### III-2-D: Defendant was allegedly not properly served

39. Next, in ¶ 4 of his motion, the Defendant claims that (A) he was not properly served with process, and (B) because of this lack of service, he was not aware of the current lawsuit (not just the default).

40. The second half of that paragraph is, again, a bald-faced lie. He knew about this case from the beginning, and even made a publicly visible forum post acknowledging its existence. The second half of this paragraph should be sanctioned for violating Fed.R.Civ.P. 11(b)(3).

41. As for him not being properly served with process, this is highly unlikely. The next few paragraphs in his motion attempt to give an explanation as to how it is plausible he would not have received service of process by email. I certainly intend to systematically argue against those details, but for the time being, I will say this: Even if *none* of the email addresses I used to serve him with process actually successfully reached him, he *still* was properly served, simply by dint of the fact that he was already aware of the lawsuit to begin with. As I explained in Dkt. 30 ...

> "At this point, service of process is merely a formality. The Court could probably forego service entirely, and simply post an order, appearing only on Pacer, ordering him to appear within 21 days, and treat that as service effected. While the propriety of that action may be questionable under the Federal Rules of Civil Procedure, the Defendant's *constitutional* right to notice would still be satisfied."
> See Dkt. 30, ¶ 9 (emphasis in original).

42. Therefore, he was effectively served with process the minute Dkt. 35 was uploaded via ECF, even if the actual email service itself didn't count.

43. Of course, he most likely did get served with process and is simply lying about it, because as I am about to explain, the various details he gives to try and support his claim that he didn't get notified don't make any sense and, in some cases, even *exacerbate* his culpability.

### III-2-E: Blocking all emails from @yahoo

44. Next, in ¶ 5 of his motion, he claims he "placed a block" on any and all incoming mail from any yahoo email address on all his Gmail accounts. He claims he did this to prevent unsolicited porn messages from reaching his inbox.

45. First of all, this is yet another instance where he could easily provide proof if he were

telling the truth. Why not provide a screenshot of his gmail account that clearly shows this setting? It's because it doesn't exist, that's why.

46.     Of course, even if he provided proof that he had blocked all email from the @yahoo.com domain, why would he even bother doing that? He claims he did it to keep from receiving unsolicited porn. But if that is what he was trying to do, it is at once far too broad and at once too narrow of a remedy for the problem of unsolicited porn. By blocking every mail that comes from the yahoo domain, he is blocking a swarm of legitimate mail that isn't porn. Meanwhile, most porn companies have their own websites and, therefore, their own domains, which means that blocking all mail from the yahoo domain would be ineffective at blocking the vast majority of unsolicited porn. As such, this excuse as to why he blocked all of yahoo (if he even did block all of yahoo and isn't simply lying) is most likely a pretextual excuse.

47.     Of course, it's also a lie for a different reason: You literally can't block entire domains on Gmail. The feature simply doesn't exist on that service. I checked it myself. You can block individual email addresses, but not entire domains! To prove this, see **Exhibit A** (because unlike the Defendant, I actually provide proof whenever I make a claim). That exhibit is a screenshot of an email I sent to myself, from my primary email address ([acerthorn@yahoo.com](mailto:acerthorn@yahoo.com)) to an old, dormant Gmail account I haven't used in years. As you can see, there was the option to block "Acerthorn," but not the option to block the entire "yahoo" domain. The Court can even verify this itself if it wanted to, as I'm sure it has a Gmail account of its own.

48.     But even if he somehow managed to block any and all yahoo emails on his Gmail accounts (even though it is ludicrous that Google would give him access to special tools that nobody else has), *that still doesn't save him!* This is because, even if he did manage to block them, Gmail does not handle "blocking" the same way most other email domains do. Whenever an email address is blocked on Gmail, messages from that email address automatically are sent to the Spam folder. See **Exhibit B**. This means that, even if my email service to him was marked by the his gmail account as belonging to a "blocked" anything (however it got to that point), *he still would have received it!* Whether or not he personally *opened* the email is another story, but he still would have *received service*. Mail from the Post Office is still considered delivered even if

the recipient immediately throws the envelope away without opening it, so there is no good reason why the Court should treat email any differently.

49. So no matter how you slice it, the Defendant was indeed served with process, and yes, he knew about the pending lawsuit. Period.

III-2-F: He, allegedly, doesn't check his Gmail accounts

50. Next, in ¶ 6 of his motion, he claims that he does not check his Gmail accounts, and that he instead has "important" mail "from Google" forwarded to his stangranch email address, which is his primary one. Once again, he provides no proof of this, and should be disbelieved accordingly.

51. But even if that were true, that still doesn't save him here. If he actively takes steps to ensure that mail sent to an email address that he actively uses does not actually get read by him, that makes him culpable for not responding to that mail (and again, all it takes is one culpable act on his part for the entire third falk factor to weigh against him). It's as simple as that. This is another instance where "equity aids the vigilant, not those who sleep on their rights."

52. It would be like if I had a PO Box that I only check 2-3 times a year. I don't get to claim that I didn't receive mail that was sent to that PO box months ago just because I, personally, didn't physically go and read it in a timely manner. That's on me. As I said earlier, mail is considered "delivered" once it is deposited in the recipient's mailbox, regardless of what the recipient does or doesn't do with the mail after delivery, and there's no good reason why email should be treated any differently.

53. On a side note, the fact that Jones still uses his stangranch email address as his primary one is yet another clue that he's lying about his parents disowning him. If you actually go to the website of stangranch.com, you realize that it is a website advertising Marty Jones' (father of Jarrod Jones) auto body repair shop. So ... Marty has disowned his son, kicked him out of his house and was entirely indifferent to his son **living on the streets**, yet he still allows his son to use the email account associated with the family business?! You honestly expect me to believe that?!

54. On another side note, in ¶ 5 of his motion, the Defendant claimed he placed a block on all incoming mail from yahoo going into his Gmail accounts (not his stangranch account, but his

Gmail account) in order to curb the onslaught of porn. But now, he claims he doesn't even check his Gmail accounts in the first place, and that mail from Google is simply forwarded to his stangranch accounts. If that were the case, he would never see the porn that was allegedly being sent to his Gmail accounts in the first place, so why does he even need to put up a block in those accounts at all? They can't both be true at the same time; either he needs to put up a block in his Gmail accounts to keep himself from being harassed by porn spam, in which case he must actually use his Gmail accounts, or he directs all mail from Google to his stangranch account while not reading all other mail from his Gmail accounts, in which case no blocking is necessary on his Gmail accounts. One way or another, the Defendant is lying.

### III-2-G: Defendant supposedly terminated his zellzander email account

55.     Next, in ¶ 7 of his motion, the Defendant claims that his email address of zellzander@gmail.com was "disabled/deleted" (apparently even he doesn't know exactly which one) ever since _August 2022, the very next month immediately after the email conversation depicted in Dkt. 30-1 took place_. Remember that underlined and italicized portion in that last sentence, as it's going to become important in a minute.

56.     Once again, he provides no evidence in support of this claim, despite the fact that evidence should be very easy to come by if he were telling the truth.

57.     Furthermore, he accuses me of malfeasance by stating that my failure to disclose this fact is either negligence or purposefully withholding information from the Court. He never considers a middle ground: That I honestly didn't know. I mean ... how could I possibly have known?

58.     But even barring that, the Defendant overlooks a crucial detail. He accuses me of with-holding "valuable" information. He assumes that the fact that this email address was terminated is somehow "valuable." It isn't. Think about it: If he did indeed terminate that email account, then that just raises another question: Why? Why did he delete that account, especially so soon after our conversation concerning this case?

59.     Bear in mind that, in Dkt. 30-1, he stated that he "didn't mean to send" his first email. So he clearly regrets letting me know that this email address belonged to him. So ... did he delete the account specifically so that I wouldn't be able to use that email address to initiate any further

contact regarding this case? Was it literally just to ensure I couldn't serve him with process?

60.     If so, then guess what: ***That still makes him culpable in the default!*** In fact, that is the very *definition* of "culpable behavior." Earlier, I alluded to the fact that some of his excuses even exacerbate his culpability. This is perhaps the biggest example of that. Remember that the third falk factor is an equitable test, and at that point, "unclean hands" becomes a germane consideration.

61.     And again, all it takes is one culpable act on his part for the entire third falk factor to weigh against the defendant. It's just like I said earlier: Actively taking steps to prevent service of process from ever reaching you does not get you out of the legal obligation to accept the service of process. See https://www.abclegal.com/pro-blog/why-you-shouldnt-avoid-being-served-with-legal-documents-process ...

> "An even more compelling reason that avoiding service of process is foolhardy is that courts hold that 'actual knowledge of a legal proceeding' meets due process requirements. So, before you hide under the bed, sell your car, change your name or move to Alaska, you should consider that the rules of due process are not a way to escape having to defend yourself in court. The case In re Ball (2nd Dist. 1934) 2 Cal.App.2d 578) a defendant asserted technical violations of process service. The defendant actively avoided service by literally moving away from the process server... The court held ... the individual was legally served because he was fully aware of the situation."

62.     Remember, Jones has been privy to this lawsuit literally since its inception. He can't bury his head in the sand and smugly declare that this makes him immune from service of process.

63.     The Defendant seems to understand this to some degree. For example, in ¶ 5, he gave an excuse as to why he deleted all email from the yahoo domain. This excuse is most likely pretextual for reasons I already explained, but the fact that he felt he needed to give any reason at all just demonstrates that the Defendant understood that "why" was a relevant consideration, and that the Court would likely show him no sympathy if it knew he actively took steps to prevent me from serving him with process. So the fact that he gives no reasons why he terminated the zellzander account (right as I learned it was a way to contact him, no less), when he clearly knows the "why" to be relevant, is highly telling.

64.     In fact, there is evidence suggesting that his deletion of the account (if it even happened)

was, indeed, done in an attempt to prevent me from contacting him. This is because his facebook page - https://www.facebook.com/StygianEntertainment – still exists, but he has blocked my facebook account from being able to see it. See **Exhibit C** and **Sub-Exhibits 1 & 2**. This block-ing was obviously done in order to prevent me from being able to contact him. There is literally no other reason he even *could* have merely blocked me without also deleting the entire account.

65. In addition, once I filed Dkt. 23, the defendant, approximately one week later, on January 13, 2023, submitted a privacy complaint to YouTube because the video shown in Dkt. 23-1 (which showed me unpacking the subpoena response and showing all the pertinent information contained therein) depicted his legal name and (at the time) last known address. See **Exhibit D**. That video isn't an invasion of his privacy. It is an unlisted video, and I have not distributed that video except for that one filing (see **Exhibit C, ¶ 8**), hence why the video (as of the time of this writing) only has 16 views despite having been posted well over a year ago. The only way he even could have seen the video is by seeing the link in Dkt. 23-1[5]. Therefore, it is highly probable that the Defendant filed that complaint, not out of any legitimate concern for his privacy, but in a willful and malicious attempt to sabotage my ability to bring the case against him.

66. Because of these two acts, and because of the most likely motive behind these two acts (to sabotage my ability to bring the case against him), that increases the likelihood that him deleting his zellzander email account was also done to accomplish that same purpose. See Federal Rule of Evidence 404(b)(2) (evidence of other wrong acts is admissible to prove motive and intent behind disputed act).

67. So unless Jones has a *genuinely good reason* why he deleted that email address, a reason that had nothing to do with me, and the fact that it just happened to coincide with me learning that I could contact him at that email address was entirely coincidental, **_AND_** he can actually provide proof of this reason (something he seems to be averse to providing in any instance, no matter how easy it would be to provide it), then the Court should still consider the Defendant to have acted culpably in being entered in default, and again, only one culpable action is enough for the entire third falk factor to weigh against the Defendant.

---

5  And if he did that, that means he was still following the case of his own accord, which, as I've already explained multiple times in this opposition, makes him culpable for the default in its own right.

<u>III-2-H: "A few simple google searches" would apparently reveal his primary email account</u>

68.     Next, in ¶ 8 of his motion, the Defendant scoffs at my attempts to locate him, comparing my use of professional people-locator services like Been Verified and Spokeo to citing Wikipedia as a source in university research paper. He also insists that "a few simple google searches" would have told me his primary email address (as if Google searches on their own, rather than the search results, are any more reliable as sources in a university research paper than Wikipedia).

69.     Of course, he fails to provide any evidence that this is true (par to the course for the Defendant at this point). For example, he doesn't tell us exactly what search phrases I should have entered or what the search results would have been, nor does he show that these google searches qualify as "simple" ones (aka that any reasonable person would have thought to enter *these specific search terms* without being psychic), so he is obviously lying about that.

70.     Even barring the lack of evidence, I am left wondering how this is relevant to a motion to set aside default. The third falk factor is whether *the defendant* engaged in at least one culpable act that led to the default, not whether *the plaintiff* did his due diligence in finding an appropriate email address. Unlike in personal injury torts, there is no "comparative fault" in this case. So how do the allegations in ¶ 8 of his motion relieve *him* of culpability?

71.     For that matter, I already had an appropriate email address to use: The email address of [zellzander@gmail.com](mailto:zellzander@gmail.com). When conducting service of process by email, I am not required to use the absolute best email address possible. I am not even required to use an email address that is 100% guaranteed to reach the defendant. All that is required is that the email address I use is "reasonably calculated" to reach him. The zellzander account meets that criterion, full stop. As I explained in the last section, service either (A) reached him, or (B) only didn't reach him because he maliciously deleted the zellzander account specifically to prevent me from reaching him, at which point he is still culpable. Therefore, ¶ 8 of the Defendant's motion should be ignored.

<u>III-2-I: Claiming to have a falling out with his parents</u>

72.     In what appears to be an attempt to explain why he didn't accept service of process the first time, the Defendant, in ¶ 9 of his motion, argues that he got disowned by his parents and kicked out of their house, forcing him to seek refuge at a friend's house. Once again, I am left

wondering what this has to do with the current motion to set aside default. Bear in mind that service of process was still done by email. So the fact that traditional service was ineffective doesn't matter anymore.

73. Rather, this paragraph only provides even more clues that the Defendant is making all of this up. It may explain why he no longer lives with his parents, but as I explained in my Motion to Investigate Defendant's Financial Status (Dkt. 43), he traveled literally across the vertical length of the *entire country* just to crash on a friend's couch. What, did he not have even one friend in the Seattle metropolitan area that he could have called in a pinch? He didn't have even one friend who was a little bit closer than **a seventeen hour drive[6]?!** The odds of that are astronomical. It's far more likely that he is making all of this up, and should be sanctioned accordingly.

74. It becomes even more unbelievable when you realize how long this has allegedly been going on. According to Jones' In Forma Pauperis application (Dkt. 39), the last job he had was in August of 2023. So you're saying that Jones has been unemployed (and, therefore, contributing nothing to his friend's rent or bills) for approximately 8-9 months, and his friend still hasn't gotten sick of his mooching?!

75. On Jones' LinkedIn[7] profile, he fancies himself a "game tester" and "level designer." He also claims to have spent 14 momths as a game tester for a company called Volt. Knowing this, and considering how astronomically unlikely Jones' current story is, it seems far more probable that Jones (A) was offered a job by a video game company in Southern California, (B) relocated to take that new job, and (C) blatantly lied to the Court.

III-2-J: Most of the email addresses allegedly are not his.

76. In ¶ 10 of his motion, the Defendant claims that "many" (but not all) of the email addresses I sent the service of process to are not and never were his. Once again, this fails to do him any good in his quest to set aside the default. It doesn't matter that some, or even most, of the emails I sent the service of process to were duds. As long as even one single solitary email address I sent service to that fateful day (A) belonged to him, and (B) the service either (i)

---

6  See **Exhibit E.** Also, he most likely would have driven that distance, rather than flown, owing to the fact that he claims to still have his 2008 Chevy HHR (see Dkt. 39), and he couldn't have taken that with him on a plane.

7  See https://www.linkedin.com/in/jarrod-jones-2a834950. In case Jones tries to delete it after this gets filed, a copy of it is being attached as **Exhibit F**.

reached him[8], or (ii) only didn't reach him because he actively took steps to prevent it from reaching him, then service by email was effected on the Defendant. It's as simple as that.

77.	He then goes on to cite two California state court rules, both of which are completely inapposite in federal court and should be summarily disregarded accordingly.

III-2-K: Allegations of past lying are not relevant to this action.

78.	Finally, in ¶ 11 of his motion, the Defendant attempts to point out previous times I have been reprimanded or caught allegedly lying in this district. Again, the third falk factor is whether *the defendant* engaged in at least one culpable act that led to the default, not whether *the plaintiff* engaged in any bad conduct, ever. He doesn't even *try* to tie this in with setting aside the default. What does any of this have to do with anything?

79.	Is he just trying to stir up resentment against me for its own sake? If so, then the Court should caution him that such evidence is flagrantly inadmissible under Federal Rules of Evidence 403 and 404, and he should be cautioned that future attempts at mudslinging without any additional evidenciary purpose may expose him to sanctions.

80.	For the record, I am not conceding that I did these two things, and/or that they are as bad as he makes them out to be. I insist on having my day in court if anyone is going to try and punish me for them. I am merely saying that they are not relevant to *this* motion at *this* point in time. See Loughran v. Loughran, 292 US 216, 229 (1934) ("Equity does not demand that its suitors shall have led blameless lives"). See also Dollar Systems, Inc. v. Avcar Leasing Systems, Inc., 890 F. 2d 165, 173 (9th Cir. 1989) ("It is fundamental ... that the alleged misconduct by the plaintiff relate directly to the transaction concerning which the complaint is made"). See also Republic Molding Corporation v. BW Photo Utilities, 319 F. 2d 347, 349 (9th Cir. 1963) ("What is material is not that the plaintiff's hands are dirty, but that he dirtied them in acquiring the right he now asserts... we should not by this doctrine create a rule comparable to that by which a careless motorist would be 'able to defend the subsequent personal injury suit by proving that the pedestrian had beaten his wife before leaving his home'").

81.	Therefore, all the times when the Defendant sat on his hands in responding to this lawsuit

---

[8] And remember: It still "reached him" as long as it became visible and openable in his inbox and/or spam folder, regardless of whether he, personally, ever saw, opened, or read it.

despite knowing about it since its inception and all the times he actively took steps to try and sabotage my efforts to bring the case against him by deleting, blocking, and false reporting are germane considerations, but my behavior in entirely unrelated cases is not.

## IV: CONCLUSION

82. In conclusion, Jones's entire defense, from the outset, was hoping that he'd never get caught, that I would never be able to prove that it was him who did it. When that didn't work, he didn't have a Plan B. He had no defense on the merits, so now, all he has left are crocodile tears, sob stories, and mudslinging. He hasn't even *attempted* to argue the first two falk factors, despite them being exponentially more important to the overall analysis than the third. Mean-while, the third falk factor – the one factor he actually made a token attempt at – fails miserably because he is repeatedly caught in provable lie after provable lie. He never offers even a scintilla of evidence to support his already unlikely claims, and in some cases, he literally lies about how Gmail works and just hopes we don't notice, despite both the Court and I easily being able to verify of our own accord that Gmail doesn't work like that.

83. In short, the Defendant's motion is frivolous.

84. Although the Court technically has discretion, in a case like this, where all three falk factors weigh against the defendant, any order granting this motion would necessarily be an abuse of discretion. Only by considering additional factors besides these three could the court possibly justify a decision favoring the Defendant, but that would be an abuse of discretion. See Kern v. TXO Production Corp., 738 F. 2d 968, 970 (8th Cir. 1984) ("[W]hen we say that a decision is discretionary... we do not mean that the district court may do whatever pleases it... An abuse of discretion ... can occur ... when an irrelevant or improper factor is considered").

85. Wherefore, premises considered, I respectfully pray that the motion to set aside default be denied, that we move onto the already overdue motion for default judgment, and for any other relief to which I may be entitled.

So requested on this, the 17th day of May, 2024.

*/s/ David Stebbins*
David Stebbins (pro se)