David Stebbins (pro se Plaintiff)          123 W. Ridge Ave., APT D, Harrison, AR 72601
(870) 212-4947                              acerthorn@yahoo.com

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                                           PLAINTIFF

VS.                              Case 3:22-cv-04082-AGT

JARROD JONES                                                             DEFENDANTS

**MOTION FOR PARTIAL SUMMARY JUDGMENT**

Comes now, pro se Plaintiff David Stebbins, who hereby submits the following Motion for Partial Summary Judgment in the above-styled action.

I: STATEMENT OF UNDISPUTED FACTS

1. For what it's worth, the contents of Dkt. 38 and all the evidence attached therein are hereby incorporated by reference.

2. I am a small Youtuber and Twitch streamer who goes by the alias "Acerthorn." My eponymous Youtube and Twitch channels can be found by going to the URLs of www.youtube.com/@acerthorn and www.twitch.tv/acerthorn, respectively. See **Dkt. 51, ¶ 4**, where the Defendant admits to this fact.

3. The individual defendant is an unknown person who goes by the alias "CMDR ImperialSalt" on Youtube, and the alias "ZellZander" on the website of Kiwi Farms. See **Dkt. 51, ¶ 5**, where the Defendant admits to this fact.

4. In early June of 2022, another Youtuber who goes by the alias "Vacant" and I agreed to do a livestream debate together on my Twitch channel. See **Exhibit A**.

5. Vacant agreed that I am the sole author and sole copyright holder of this stream. See **Exhibit A, Page 4**.

6. Vacant and I had the debate stream on June 25, 2022. On June 10, 2022, I made a video for my Youtube channel announcing the time, place, and subject-matter of the stream. At timestamp 0:28 of that video, at the bottom of the screen, I provide a disclaimer stating that I will be seeking copyright registration of this debate stream. See https://www.youtube.com/watch?

v=fD-Fr0Aq6a0.

7.    After the debate ended, I transferred the video to my Youtube channel, but I restricted viewing of that video to those who paid my channel at least $1 per month. See https://www.youtube.com/watch?v=u4lf3e5zYxs.

8.    On June 28, 2022, the defendant – acting under the alias "CMDR ImperialSalt" – paid my channel the $1 fee to see the stream. Rather than watch the stream on Youtube, the Defendant instead proceeded to download the stream onto his computer. Later that same day, the defendant went to a website called Kiwi Farms, where he announced that he had "managed to retrieve a copy of his [my] Elden Ring 'Debate' and [was] in the process of compressing the file to about 200mb at the moment." See **Exhibit B**.

9.    Approximately 1½ hours later, he posted the entire video, literally every single second of it, onto the Kiwi Farms website. While posting the video, he gave all of two sentences worth of criticism and commentary: "I like how 8 minutes into it starts to devolve. The sores on his face is apparently he 'cut himself while shaving.'" See **Exhibit C**.

10.   A short time later, he made a post admitting that he paid the $1 fee for the sole purpose of acquiring the video so he could repost it on KiwiFarms. See **Exhibit D**.

11.   After filing this lawsuit, the Defendant made a post claiming that YouTube "provided" a download button. See **Exhibit E**. In fact, YouTube does not provide a download button, at least not one that would have enabled the Defendant to repost the video to Kiwi Farms. The only download button that YouTube provides corresponds to its "YouTube Premium" service. See https://www.youtube.com/premium/annual?app=desktop. These downloads, however, can only be viewed from within YouTube's website. See https://youtu.be/5yV7iuK6ynE for proof.

12.   There is no way he could have used this service to lawfully download my video, since the download he used enabled him to repost the video to Kiwi Farms, which would not have been possible if he downloaded it the legal way. Therefore, it is he, not YouTube, who "provided" the download button he speaks of, by installing a third party browser extension to this effect.

## II: ARGUMENT & LAW

13.   Summary judgment is appropriate when there is no genuine dispute of material fact and

one party is entitled to prevail as a matter of law. See Fed.R.Civ.P. 56. Parties can move for summary judgment on "part of each claim or defense" as well. See Rule 56(a). To defeat summary judgment, "the issue of fact must be 'genuine. When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" See Matsushita v. Zenith, 475 US 574, 586 (1986) (citations omitted).

14. Also, just to remind the Court, the contents of Dkt. 38 and all arguments and evidence contained therein are hereby incorporated by reference.

### II-1: No affirmative defenses are available

15. First, the Defendant has no affirmative defenses he can raise. In his Answer, he raised six affirmative defenses. However, for the reasons set forth in my "Motion to Strike or in the Alternative for Partial Judgment on the Pleadings," all of those defenses are patently frivolous and should be either stricken pursuant to FRCP 12(f) or disposed of summarily pursuant to FRCP 12(c).

16. Once those defenses are disposed of, the Defendant cannot raise any more. It is clearly established, black-letter law that, with the sole exception of "lack of subject-matter jurisdiction," all affirmative defenses are waived and abandoned by the Defendant if the Defendant does not preserve them in his Answer to Complaint. See Arizona v. California, 530 US 392, 409 n. 3 (2000) ("[A] party generally forfeits an affirmative defense by failing to raise it"). Therefore, because the Defendant never raised any other defenses except the six which are currently subject to being stricken, no other defenses need to be even nominally considered.

17. This means that, if I am entitled to summary judgment on the issue of prima facie copyright infringement, then I am entitled to summary judgment on the issue of liability overall. At that point, the extent of damages remains the sole issue to be litigated.

### II-2: Prima Facie Copyright Infringement

18. "There are only two elements necessary to the plaintiff's case in an infringement action: ownership of the copyright by the plaintiff and copying by the defendant." See Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1151 (9th Cir. 1986).

### II-2-A: Ownership of Copyright by the Plaintiff

19. It is proven beyond all genuine dispute that I am the sole copyright holder of the underlying stream.

20. The stream is obviously one of human authorship, as evidenced by the fact that I began talking as soon as I appeared on the camera, and was clearly speaking a way that showed that I knew I was livestreaming to my audience.

21. The stream contains minimum creative spark because Vacant and I spent the entire stream discussing opinions about the From Software fanbase and From's legal/moral/ethical duty to police its fanbase and expel egregiously toxic people from it.

22. Therefore, the stream is absolutely subject to copyright protection.

23. As to the question of who owns the copyright in the stream, Vacant is the only other person in the world who could even arguably have any claim to being a partial copyright holder. However, Vacant is not a co-author because ...

    (a) He did not participate in fixing the work into a tangible medium of expression. See Garcia v. Google, Inc., 786 F. 3d 733, 743-44 (9th Cir. 2015) (citing Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730, 737 (1989));

    (b) Vacant agreed in writing that he is not a co-author. See **Exhibit A, Page 4**; and

    (c) It ultimately doesn't matter, because the Defendant never raised the defense that (A) Vacant was a co-author, and (B) he got a license from Vacant to repost the video. Because the Defendant never raised that defense in his answer, he has forever lost that defense for reasons I explained above.

24. Therefore, the first essential element for prima facie copyright infringement – that I am the sole owner of this valid and enforceable copyright – is proven beyond all genuine dispute and is properly subject to summary judgment.

### II-2-B: Copying by the Defendant

25. The second and final essential element to prima facie copyright infringement – copying by the Defendant – is also proven beyond genuine dispute. Remember that there are two counts of infringement that I am suing over in this case: First, the downloading of the stream from

YouTube, and second, the reposting of that stream on Kiwi Farms. The first of these two infringements is what creates personal jurisdiction in the Northern District of California, as that is the only action that happened in California (by dint of it happening on YouTube's servers).

26.     As far as the second infringement (the reposting) is concerned, as pointed out above, the reposting of the stream by ZellZander is publicly visible. See **Exhibit C**. In his Answer, the Defendant denies reposting the video (see Dkt. 51, ¶ 15), but the Court can see the reposting with its own two eyes. What's there to deny?! So not only is the reposting proven beyond all genuine dispute, but the Defendant's denial of same is frivolous and subject to sanctions for violating FRCP 11(b)(4).

27.     The fact that ZellZander reposted the stream is also proof that the Defendant also downloaded the video off of YouTube, which is the first count of infringement. After all, how else could he possibly have gotten the video in order to repost, other than downloading it?

28.     If his rant in **Exhibit E** is any indication, he probably believes that the download button he used to obtain my video was provided by YouTube. Indeed, the Defendant insists that this is how he downloaded the video. However, in addition to only attaching an exhibit of questionable probative value (he could very easily have simply photoshopped that), it still does him no favors. For the reasons I mentioned earlier, downloading using the YouTube premium feature does not provide the Defendant with a copy of the video that he is capable of reposting. So to get the video in a repostable format, he would have to have used a third party download button.

29.     However, this is demonstrably untrue, and the Court can even see for itself that it is untrue. If you pull up your Firefox browser, select "help" at the top of the browser, and then select "troubleshoot mode," you can launch the Firefox browser will all extensions disabled. From there, you can navigate to any YouTube video – it doesn't matter which one – and clearly see with your own two eyes that the only download button still available (A) requires you pay for a YouTube premium subscription, and (B) only allows you to view the downloaded videos within YouTube's own website, meaning that the Defendant could not possibly have used one of these legal downloads to repost the stream to Kiwi Farms.

30.     This proves that whatever download button Jones used to download the video must have

come from a third party browser extension, which means that he was not legally authorized to download the video to his computer.

31.     Jarrod Jones is undeniably the culprit. In his Answer, Jones *admitted* that he is ZellZander. See **Dkt 51, ¶ 5**. I don't even have to prove it, because he admitted to being the one who owns and operates that Kiwi Farms account.

32.     Even if he tried to deny this fact, I would still be able to handily prove it was him, just like I did in Dkt. 38-8, ¶¶ 30-31 and the evidence and prior filings that were referenced therein.

33.     Therefore, the second and final essential element for prima facie copyright infringement is also proven beyond genuine dispute.

34.     Because all of the Defendant's proffered affirmative defenses are patently frivolous and subject to being stricken under FRCP 12(f) or summarily dismissed under FRCP 12(c), and because the Defendant cannot raise any more affirmative defenses, that means I am entitled to judgment as a matter of law on the issue of liability.

### II-3: Willful and Malicious Conduct by the Defendant

35.     In addition, there is ample evidence that the Defendant acted with willful and malicious intent. To make things easier, the contents of Dkt. 38 (including the Memorandum in Dkt. 38-8) are hereby incorporated by reference.

36.     As I explained in my motion for default judgment, the Defendant flagrantly and blatantly reposted the entire stream, out of a willful and malicious desire to sabotage my ability to make money from it, and did so on one of the most evil and toxic websites on the entire Internet. There is absolutely no extenuating circumstance that even slightly mitigates Jones' culpability. His scienter is the highest that the law recognizes.

37.     Therefore, I ask the Court to declare that the Defendant's infringement in this case is willful and malicious.

### III: RELIEF REQUESTED

38.     I therefore ask the Court to declare, as a matter of law, that the Defendant is liable to me for one count of copyright infringement, and that the only thing that remains to be litigated is the extent of damages.

39.    I also ask the Court to declare that the Defendant's actions in this case were willful and malicious. This would have two effects later on: First, it would empower the Court to award statutory damages of up to $150,000. Second, it would ensure that, whatever damages award the Court gives me, Jones would not be able to discharge that debt in bankruptcy.

### III-1: Injunctive Relief

40.    Once the issue of liability has been conclusively established, there is no good reason for the Court to delay issuing injunctive relief against the Defendant. Therefore, I ask the Court to issue the following injunctions:

### III-1-A: Infringement #1: Remove the infringing post

41.    First, I ask that the Defendant be ordered to immediately remove the infringing post from Kiwi Farms.

### III-1-B: Injunction #2: Impounding and Disposition of the Defendant's Devices

42.    In addition, I ask the Court to order, pursuant to 17 USC § 503, that the Defendant surrender all of his computers, smartphones, and other electronic devices that have the potential to have the stream stored on them, to be impounded by a computer forensics expert of the Court's choosing, and to have those devices thoroughly scrubbed of any/all instances of this stream appearing anywhere on them.

43.    I also ask that the Defendant be made to bear, in the first instance, all the costs associated with this impounding and disposition.

### III-1-C: Injunction #3: See to the removal of all descendant instances of infringement from the Internet

44.    Third and finally, I ask that the Defendant be ordered to, personally and by any means necessary, ensure that all instances of infringement that occurred as a direct or indirect result of his posting the video on KiwiFarms (such as the incident mentioned in Dkt 38-8, ¶¶ 69-72) be undone.

45.    This includes ...

  (a)    ensuring that all instances that appear on any other website must be taken down, and

  (b)    if anyone who saw that Kiwi Farms thread had downloaded a copy of that video to

their own devices, that the Defendant be ordered to ensure, by any means necessary, that their devices are likewise impounded and purged of any/all instances of infringement in a manner similar to Infringement #2 above.

46. An exception to this can be made if he can prove that the subsequent infringement was not caused, either directly or indirectly, by his posting of the video to Kiwi Farms. For example, if he could prove (not just allege) that somebody else had (A) paid me the $1 fee to see the stream, (B) downloaded it just like Jones did, and (C) then proceeded to repost the video entirely independent of Jones' actions, then he would not be in violation of this injunction. However, that would require that Jarrod Jones bear the burden of proof. If someone reposts the stream after downloading it from some anonymous torrent app, and Jones cannot *prove* that the origins of that video file came from an original source other than him, it should be presumed that his posting of the video to Kiwi Farms that fateful day was an ancestor action that enabled the other party to obtain the video without paying me.

47. At this point, the Court is probably wondering "Do I even have the *power* to issue this injunction, even if I wanted to?" The answer is yes, you do. 17 USC § 502(a) gives district courts broad power to issue injunctions "on such terms as it may deem reasonable." This gives the court nearly limitless discretion to affix injunctions however it sees fit, limited only by the Defendant's constitutional rights.

48. So it is undisputed that the Court *can* issue this injunction ... but *should* it?

49. Yes, because as I explained in Dkt 38-8, Jones is the one who set all of the other acts of infringement into motion in the first place. But for Jarrod Jones acting in blatant and flagrant violation of my legal rights, none of this would ever have happened in the first place. Therefore, he should be made to suffer the consequences of the domino effect he deliberately and maliciously caused.

50. Think about it this way: If he isn't the one forced to clean up his own mess, who will? Obviously, if the Court doesn't make him clean up his own mess, then the job will inevitably fall to me. There's nobody else in the whole world who could even arguably be tasked with undoing all this damage. When you look at it that way, it ceases to be a question of whether it's

"reasonable" or "equitable" to impose this massive burden onto him, and it quickly becomes a question of "which is the lesser of two evils?"

51.  To that end, why should it be me who has to do it? I've done absolutely nothing wrong in this case. By contrast, his actions were sufficiently malicious that he deserves to have to live with the consequences of his actions. By far, the lesser of two evils is to force Jones to bear the burden of cleaning up his own mess, rather than force me to have to do it.

52.  Does that sound like it would be impossible to ever achieve, especially the part mentioned in ¶ 45(b)? Well, even if that is true[1], maybe the Defendant should have thought about that when he was reposting my video with the express intention of inflicting an injury onto me that can never be fully undone. After all, it would be the epitome of a pyrrhic victory if the defendant was enjoined to stop circulating my copyrighted content, but not ordered to clean up the mess he had already made. That would be analogous to ordering an arsonist to stop burning down the plaintiff's house after the house had already been reduced to ashes, but not ordering the arsonist to repair the damage he had already inflicted.

53.  It may indeed be true that the defendant will never, in his entire lifetime, be able to fully comply with this injunction (again, I am not admitting to that; I am just playing devil's advocate). But at that point, he should lose that defense because his "inability to comply with the district court's ... order is the intended result of [his] own conduct." See FTC v. Affordable Media, LLC, 179 F. 3d 1228, 1239 (9th Cir. 1999). See also United States v. Asay, 614 F. 2d 655, 660 (9th Cir. 1980) ("Inability to comply with an order is ordinarily a complete defense to a charge of contempt. An exception exists when the person charged is responsible for the inability to comply").

54.  Furthermore, imposing this injunction is also the best way to vindicate the public policy interest mentioned in 17 USC § 502(a): "to prevent or restrain infringement of a copyright." Issuing this injunction will heavily deter future would-be infringers from going through with their

---

1   For the record, I am not admitting that it is impossible. "It is well established that a party petitioning for an adjudication that another party is in civil contempt does not have the burden of showing that the other party has the capacity to comply with the court's order. Instead, the party asserting the impossibility defense must show categorically and in detail why he is unable to comply." See FTC v. Affordable Media, LLC, 179 F. 3d 1228, 1240-41 (9th Cir. 1999) (citations and quotations omitted). Rather, I am saying that, even if it is impossible, that should not absolve the defendant of liability in this case. If he can never comply with this injunction, maybe he should have thought about that when he was willfully and maliciously setting out to cause this injury with the express intent of making it impossible to fix. At that point, the impossibility should be his problem, not mine.

desire to infringe. People would be far more hesitant to flagrantly repost copyrighted content if they knew that such massive (possibly even lifelong) consequences would be on the table.

55.     To be clear, I am only asking for this nuclear injunction because this is the ideal case for it. As explained in Sec. II-3 above, the Defendant's actions were flagrant and blatant, done out of a willful and malicious desire to sabotage my ability to make money off the stream, which itself was motivated primarily by Kiwi Farms' purely evil desire to inflict as much pain and suffering on its "cows" as humanly possible, solely for the demented amusement of its psychotic userbase.

56.     In addition, this nuclear injunction is only reserved for cases where the Defendant is singularly responsible for settings these events into motion. If we went back in time and stopped Jones from reposting the stream, all subsequent repostings (such as the one mentioned in Dkt. 38-8, ¶¶ 69-72) would cease to exist like a grandfather paradox. This is in contrast to major, big budget productions, which typically have large numbers of Day 1 leaks from countless anonymous infringers, all acting independently of one another. Here, Jarrod Jones, and Jarrod Jones alone, caused unauthorized copies of my stream to be illegally leaked online, and therefore, Jarrod Jones and Jarrod Jones alone should be responsible for undoing all of the unauthorized leaks that he, personally, caused to be distributed.

57.     Therefore, the injunction is justified in this case.

## IV: CONCLUSION

58.     I will be serving the Defendant with a copy of a draft Motion for Sanctions right after filing this motion. If, within 21 days, he does not withdraw his patently frivolous denials, I will file that motion.

59.     Wherefore, premises considered, I respectfully pray that this motion for partial summary judgment be granted.

So requested on this, the 12th day of June, 2024.

*/s/ David Stebbins*
David Stebbins (pro se)